## PETER TINSMAN *v.* THE BELVIDERE DELAWARE RAILROAD COMPANY.

1. It is no objection to an action by a reversioner, that the act complained of is also an injury to the tenant in possession.

2. Nor is it an answer to an action by a reversioner, that the cause of the alleged injury may by possibility be removed, or the nuisance abated, before the determination of the tenancy for years.

3. An action may be maintained by a reversioner for the mere maintenance of an erection of a permanent character prejudicial to the right of the reversioner, although no actual damage has been sustained by loss of tenants or diminution of rents.

4. In an action for an injury to the reversion, the declaration must either state an injury of such a nature as to be necessarily injurious to the reversion, or must explicitly allege that it was injurious to the reversion.

5. An averment that the act complained of is prejudical to the tenant's interest, does not render the count illegal. The averment, that the reversionary interest is prejudiced, is an essential part of the count, and must be sustained by proof.

6. Where an erection in a watercourse is the immediate cause of injury to the possession, and, without further interference by the act of man would, in the ordinary course of things, continue to be so on the determination of the tenancy, the revisioner has a right of action, on the ground that the encroachment on the inheritance may, by lapse of time, ripen into a right, where he has notice or knowledge of it.

The action was brought to recover damages for an injury alleged to have been occasioned by the defendants, in the erection and construction of their road to certain mill pro-

perty owned by the plaintiff, while in the possession and occupancy of his tenants for a term of years.

The declaration contains two counts, as follows :

The Belvidere Delaware Railroad Company were summoned to answer unto Peter Tinsman, in a plea of trespass on the case, &c. ; and thereupon the said Peter Tinsman, by Augustus G. Richey, his attorney, complains, for that, whereas before and at the time of the committing of the grievances by the said defendants, hereinafter mentioned, a certain messuage, saw mill, and eddy and creek's mouth, for rafting and storing lumber, and premises, with the appurtenances, situate in the township of Alexandria, in the county of Hunterdon aforesaid, on a certain stream called the Musconetecong creek, and on the bank of the Delaware river, were in the possession and occupation of Peter Hart and John Moore, as tenants thereof to the said Peter Tinsman, for a certain term of years, the reversion thereof expectant on the determination of the said term, then and still belonging to the said Peter Tinsman, to wit, at Alexandria aforesaid, in the county and within the jurisdiction aforesaid ; yet the said defendant, well knowing the premises, but contriving and unjustly intending to injure, prejudice, and aggrieve the said plaintiff in his reversionary estate and interest of and in the said messuage, saw mill, and eddy and creek's mouth aforesaid, and premises, with the appurtenances, whilst the said messuage, saw mill, and eddy and creek's mouth aforesaid, and premises, were so in the possession and occupation of the said tenants, as such tenants thereof to the said plaintiff as aforesaid, and whilst the said plaintiff was so interested therein as aforesaid, to wit, on the first day of March, in the year of our Lord one thousand eight hundred and fifty-three, and on divers other days and times between that day and before the commencement of this suit, at the township of Alexandria, in the county of Hunterdon, and within the jurisdiction of this court,

erected, deposited, and placed a large embankment of lumber, stones, and earth on the bank of the Delaware river, and in the eddy and mouth of the said Musconetcong creek, of great width and length, to wit, of the length of two hundred feet, and of the width of ninety feet, and have ever since the first day of March aforesaid maintained, kept up, and continued the said enbankment there on the bank of the said Delaware river, in the eddy or mouth of the said Musconetcong creek, and by means thereof prevented the water from flowing in the said eddy and mouth of the said Musconetcong creek in its ordinary and usual channel, as the same had been accustomed to flow, so that the tenants of the said plaintiff could not land, raft, and store logs and lumber in as secure and safe manner for the said saw mill of the said plaintiff at the landing place on the said bank of the river Delaware, and in the eddy and mouth of the said Musconetcong creek, as they had been accustomed to do, and of right ought to do, to wit, at Alexandria aforesaid, in the county and within the jurisdiction aforesaid.

And whereas, long before and at the time of the committing of the several grievances by the said defendants, as herein after next mentioned, a certain other messuage, saw mill, eddy and mouth of the Musconetcong creek, with the appurtenances, situate in the township of Alexandria, in the county of Hunterdon aforesaid, adjoining lands of Isaac T. Rugh and others, on the bank of the Delaware river, and along the Musconetcong creek, were in the possession and occupation of Peter Hart and John Moore, as tenants thereof to the said plaintiff, for a certain term of years, the reversion thereof expectant on the determination of the said term then still belonging to the said plaintiff, to wit, at Alexandria aforesaid, in the county of Hunterdon aforesaid.

And whereas, the said plaintiff had the right to use the said saw mill for manufacturing lumber, messuage, eddy

and mouth of the said Musconetcong creek, with the appurtenances, for landing rafts, storing and securing logs and rafting lumber, without the hinderance of the defendants or any other person; yet the said defendants, well knowing all the rights and privileges of the said plaintiff, and intending to injure him in his reversionary interest, and to deprive him of the bank of the said Delaware river for landing rafts, and also to deprive him of the said eddy and creek's mouth for securing and storing logs and rafting lumber, and to render the said saw mill useless to him, on the first day of March, in the year of our Lord one thousand eight hundred and fifty-three, and on divers other days and times between that day and the commencement of this suit, at the township of Alexandria, in the county of Hunterdon aforesaid, and within the jurisdiction of this court, erected and constructed their railroad, to wit, a large embankment of lumber, stones, and earth of great height and width, to wit, of the height of thirty feet, and of the width of ninety feet, and have ever since the first day of March aforesaid maintained, kept up, and continued their said railroad and embankment there on said messuage, along the bank of the said Delaware river, and in the eddy and mouth of the said Musconetcong creek, and by means thereof prevented the water from flowing along the said bank of the Delaware river, and in the said eddy and mouth of the Musconetcong creek, in its ordinary and usual course and channel, as the same had been accustomed to flow, so that the said tenants of the said plaintiff could not land rafts along the bank of the said river Delaware, or store and secure logs and raft lumber in the said eddy and mouth of the said Musconetcong creek in as secure and safe manner, for the use of the saw mill of the said plaintiff, as they had been accustomed to do, and of right ought to do, to wit, at the township of Alexandria, in the county of Hunterdon, and within the jurisdiction of this court aforesaid, whereby the rever-

sionary interest of the said plaintiff, in the said saw mill, messuage, eddy and mouth of the said Musconetcong creek, has been greatly lessened and injured, to wit, at Alexandria aforesaid, to the damage of the said Peter Tinsman two thousand dollars, and therefore he brings suit, &c.

To this declaration there was a general demurrer.

The cause was argued before the Chief Justice, and Elmer, Potts, and Vredenburgh, Justice.

*J. P. Stockton*, for defendant, in support of the demurrer.

In the first count there is not even an allegation that the reversion is injured. It states a fact that may occasion an injury to the reversion, and then avers that it injures the tenant's interest. This count is clearly defective.

In the second count, every act complained of is alleged to be injurious to the tenant in possession, not to the reversioner.

The action on the case by the reversioner against a stranger for injuries to the reversion, is of modern origin. The ancient remedy was an action by the landlord against his tenant for permissive waste.

Under the modern practice, the tenant may sue at the same time with the landlord, and for the same act. This renders it necessary that the reversioner should set out clearly the injury of which he complains, otherwise the defendants are made twice responsible, not only for the same act, but for the same injury. *Bac. Ab.*, "*Action on the Case*" A ; 3 *Levinz* 360 ; 1 *Chit. Pl.* (*ed.* 1840) 63.

The reversioner must allege such permanent injury as necessarily affects his interest. He must aver that the reversionary interest was injured. The declaration must show a temporal damage, *i e.*, a damage already accrued, and not a future or prospective damage. 1 *Maule & Sel.* 234 ; 1 *Taunt* 202 ; 4 *Burr.* 2141 ; 2 *Moody & R.* 34 ; 9 *Queens B.* 10(*) ; 4 *Barn. & Ad.* 72 ; 2 *Barn. & C.* 910 ; 3 *Pick.* 352.

There is no averment that the reversionary interest was injured; that the reversion would not sell for as much, or rent for as much as before, or that the tenant left the premises, or would not pay rent. No injury to the reversion can result from obstruction to the enjoyment of any right by the tenant in possession.

The only exceptions to the rule are in actions by the landlord against his tenant, who denies the landlord's title.

The declaration must state the particular damage sustained, or the plaintiff will not be permitted to give evidence of such damage on the trial.   14 *Wend.* 159.

The declaration should show how the injury to the tenant prejudiced the landlord.   2 *Chit. Pl.* 778 ; 3 *Wilson* 461.

*Randolph*, for plaintiff, contra.

Both authority and precedent are against the demurrer. 1 *Chit. Pl.* (*ed.* 1819) 142 ; 2 *Saund. Pl. & Ev.* 686 ; *Com. Dig. "Action on the Case for Nuisance"* B ; 4 *Burr.* 2141 ; *Spenc.* 536.

The averment of injury to the interest of the reversioner, at the conclusion of the narr., applies to both counts, and renders the first count valid.

The damage to the tenant is properly set out as the ground of injury to the reversioner.

Temporal or immediate injury to the reversioner is not necessary to be averred.

*Field*, in reply.

The objections are—1. That it nowhere appears on the face of the declaration that the injury complained of is one for which the reversioner can maintain an action.   2. The damages which the plaintiff, in point of fact, alleges to have been sustained are damages to the tenant, and not to the reversioner.

Where the reversionary interest is not necessarily in-

jured by the acts complained of, it is not enough to aver generally that the acts were done to the injury of the reversioner. Whatever constitutes waste at common law is *per se* an injury to the reversion.

The injury complained of, must be of such permanent character as to remain, of necessity, beyond the expiraation of the lease, and thus injure the reversion, or it must be shown that the reversioner has sustained an immediate injury, by loss of tenants or diminution of rents. If the cause of complaint may be removed, and the difficulty obviated before the expiration of the lease ; if the reversioner has sustained no loss by the sale of his property at a diminished price, and receives the same rent from his tenant, there has been no injury to the reversion for which an action can be maintained. *Dobson* v. *Blackburn*, 9 *Queens B.* 991 ; *Baker* v. *Sanderson*, 3 *Pick.* 348 ; 1 *Chit. Pl.* 397;

If the plaintiff relies for a recovery upon a diminution in the value of his property, that is a special injury, which must be set forth in the declaration.

The CHIEF JUSTICE. This action is brought to recover damages for an injury to the plaintiff's reversionary interest in certain real estate. The property injured consists of a saw mill, eddy, and creek's mouth, upon the river Delaware of which the plaintiff alleges that he was seized as reversioner, the property being in possession of certain tenants for years. The injury complained of is the construction, by the defendants, of their railroad, consisting of an embankment of lumber, stones, and earth, of great height and width, in the eddy and creek's mouth, so that rafts cannot be landed, and lumber stored and secured for the use of the said mill in as secure and safe a manner as the tenants had been accustomed, and had a right to do.

That the act complained of is of a character naturally, if not necessarily, injurious to the reversion, cannot be

doubted. The value of a saw mill upon a river depends very much upon its convenience for landing and storing logs, and rafting the lumber when sawed. A deprivation, total or partial, of these advantages must affect in a greater or less degree the value of the property. And the injury to the reversion consists mainly in the fact, that the occupant of the property cannot land his rafts, or store his logs, or raft his lumber, with as much convenience as formerly.

It is no objection to the action by the reversioner, that the act complained of is also an injury to the tenant. Most *torts* which are injurious to the reversion, are prejudicial also to the tenant in possession; and in many cases they are an injury to the reversion, for the very reason that they do render the premises less convenient or beneficial to the occupant. Nor is it any answer to the complaint, that the injury complained of is one for which the tenant may sue. The tenant and reversioner may each maintain his action for the self-same act, and each may recover for the injury they respectively sustain by reason thereof. The defendant is not thereby compelled to respond in damages twice for the same injury, but simply to compensate each of the parties injured, for the consequences of his tortious act. *Bedingfield* v. *Onslow*, 3 *Lev.* 209; *Sedgwick on Dam.* 142; *Com. Dig. " Action on the case for Nuisance"* B; 1 *Chit. Pl.* 72.

Nor is it an answer to the action by the reversioner, that the cause of the injury may by possibility be removed, or the nuisance abated before the determination of the tenancy for years. This is true of all nuisances, and of many immediate injuries to the freehold itself. An action will lie by the reversioner for erecting a wall, whereby the plaintiff's lights are obstructed. *Jeffer* v. *Gifford*, 4 *Burr.* 2141; *Tomlison* v. *Brown*, Sayer 215. For obstructing the flue of a chimney, thereby rendering the room unfit for habitation. 2 *Chit Pl.* 778. For divert-

ing a stream of water, whereby the soil was impoverished. 2 *Chit. Pl.* 794. For throwing back water upon the land, so that it was rendered boggy and miry. *Spenc.* 536. For obstructing a way, whereby the enjoyment of the premises is rendered inconvenient. 2 *Chit. Pl.* 810. In all these cases it is apparent that, by possibility, the cause of the injury may be removed before the estate of the tenant for years determines; yet while the nuisance or cause of complaint is continued, the premises are diminished in value, and the present value of the reversion is consequently diminished. The estate of the reversioner would sell for less. The law, therefore, regards him as sustaining an injury. And if the inheritance be in fact diminished in value, the reversioner may maintain an action for the injury, though there may have been no diminution in the amount of the rent, and no loss by a sale of the premises at a depreciated price.

In *Shadwell* v. *Hutchinson*, 3 *Car. & P.* 615, the action was brought by the reversioner for obstructing an ancient light, by erecting a roof over an uncovered space above the window, by means whereof the room was darkened, and rendered close, uncomfortable, unwholesome, and unfit for habitation. It was proved that the obstruction might be easily removed in the course of two or three days. Lord Tenterden said, I have no doubt that this is a case in which the reversioner may maintain an action, because it is an injury to the *right* that he complains of; and the effect of letting the obstruction stand might be, that, from the death of witnesses, evidence of its erection might be lost, and so the injury would become permanent. The plaintiff recovered nominal damages, one shilling.

A second action was subsequently brought for obstructing the same light, by a continuance of the same nuisance. The defendant pleaded a former recovery for the "same identical grievances." It was admitted that the obstruc-

tion was the same as at the time of the former action.   But Lord Tenterden held that the complaint, being for a later and different period, the grievances were not the same, and the plaintiff had a verdict for £100 damages.   A new trial was subsequently moved for, on the ground that there was no real substantial damage to the reversion, but only an ideal damage, for which the plaintiff had previously recovered, and that the continuation of the obstruction caused no new damage to the reversion, although it did to the possession.   But the court refused the rule.   *Shadwell* v. *Hutchinson*, 4 *Car. & P.* 333.

This case sustains the position, that the action may be brought by the reversioner, where no actual damage has been sustained by loss of tenants or diminution of rents, but for the mere maintenance of an erection prejudicial to the right of the reversioner; and that in such action more than nominal damages may be recovered.

In *Baxter* v. *Taylor*, 4 *Barn. & Ad.* 72, the Court of Kings Bench held that no action would lie by a reversioner for a mere entry upon land, though under a claim of right, on the double ground, that the injury is not so permanent as to injure the inheritance; and that the wrongdoer could acquire no right, as against the landlord, while the premises remained in possession of the tenant.

And in *Dobson* v. *Blackmore*, 9 *Q. B.* 991, the same court held that an action would not lie by a reversioner for obstructing a public navigable river by means of a floating dock, and thereby incommoding the tenant in possession. But Denman, C. J., in delivering the opinion of the court, concedes that an action might lie for an obstruction of a permanent nature in the highway, by which the value of the premises would be lowered.

In *Baker* v. *Sanderson* 3 *Pick.* 348, the Supreme Court of Massachusetts held that an action would not lie by the owner of a mill occupied by a tenant, for an injury resulting from the wrongful erection of a dam by the

defendant, and throwing the water back upon the wheels of the plaintiff's mill, unless plaintiff averred a loss of rent by reason of such injury.

This case is clearly inconsistent with the case of *Shadwell* v. *Hutchinson*, and, as I conceive, with sound principle.

If a permanent dam, under a claim of right, be constructed across the stream, whereby the water is unlawfully penned back upon the wheels of a mill of an adjoining proprietor, not only the present power, but the value of the mill is injured. It will sell for less. It will rent for less. The owner is damnified in the value of his estate. The sale of the premises at a diminished price, or a lease at a lower rent, may be satisfactory evidence of the prejudice to the inheritance, and may afford a safe measure of damages. But neither a sale nor a renewed lease is necessary to consummate the wrong, or to entitle the party injured to his remedy.

But the settlement of this point is not essential to the decision of the present inquiry. Here, not a mere nuisance which may be abated, but a direct permanent injury to the freehold itself, forms the subject of complaint. For this, all the authorities agree that the action by the reversioner may be maintained. It remains to inquire whether the cause of action is properly stated.

The first count of the declaration is defective, because it avers that the act of the defendants occasioned an injury to the tenants of the plaintiff, without averring that the reversionary interest of the plaintiff was injured or lessened thereby. Although the act in itself may have been such as naturally to prejudice the reversion, it is so stated in pleading as to limit the operation exclusively to the tenants.

The well settled rule is, that if the plaintiff declare for an injury done to the reversion, he must either state an injury of such a permanent nature as to be necessarily

injurious to the reversion, or must explicitly allege that it was done to the injury of the reversion. *Jackson* v. *Pesked* 1 *M. & S.* 234; *Potts* v. *Clarke, Spenc.* 541. The objection is not obviated by the averment at the close of the second count. Each count should contain a distinct and complete cause of action.

The second count, though unskilfully drawn, contains a legal cause of action. The pleader has undoubtedly restricted his claim for damages within very narrow limits. He avers that, by reason of the premises, the said tenants of the plaintiff could not land rafts, or store and secure logs in the eddy and mouth of the creek, as they of right ought to do, whereby the plaintiff's reversionary interest in the premises has been greatly lessened and injured. He has limited his complaint to this ground alone, although, in the previous part of the count the plaintiff had averred a right of landing and storing lumber to exist in himself. He does not aver that his own right to land lumber is at all interfered with, or that the value of the premises are otherwise deteriorated.

This averment, that the act is prejudicial to the tenant's interest, does not render the count in itself illegal. The same act which injures the tenant may, as has been said, prejudice the reversioner, and many of the precedents contain this averment of special injury to the tenant. 8 *Went. Pl.* 549, 550, 551; 2 *Chit. Pl.* 810.

It is matter of proof upon the trial, that the act complained of occasions injury to the reversion also. The averment, that the reversionary interest is prejudiced, is an essential part of the count, and must be sustained by proof. *Potts* v. *Clarke, Spenc.* 536. The demurrer being to the whole declaration, and one of the counts being sufficient, there must be judgment for the plaintiff.

Potts, J. The declaration alleges that the plaintiff has the reversionary estate and interest in a certain messuage, saw mill, and eddy and creek's mouth, for rafting and

storing lumber, on the Musconetcong creek, and on the bank of the Delaware, in the occupation of his tenant; and that the defendants have erected their railroad in said eddy and mouth of the creek, two hundred feet long and ninety feet wide, and by means thereof prevented the water from flowing in the said eddy and mouth of the creek in its ordinary and usual channel, so that the tenants of the plaintiff could not land, raft, and store logs and lumber in as secure and safe a manner, for the said saw mill of the said plaintiff, at the landing place on the bank of the river and in the eddy, &c., as they had been accustomed to do, and of right ought to do. There are two counts, substantially the same, except that the first does not allege any actual injury to the reversionary estate and interest. This, in *Jackson* v. *Pesked*, 1 *Maule & Selwyn* 234, was held fatal.

The second count does allege that the plaintiff's reversionary interest in the premises has been greatly lessened and injured by the act complained of, and he has sustained damage, &c.

This count is good. The case differs from that of *Beavers* v. *Cole and Trimmer*, decided at the last term, in this, that there the erections were not complained of, but only the wrongful use of the water by means of the erections. The erections were not a necessary or natural cause of the wrongful use of the water; the penning back of the water by day, and the discharging of it in large quantities by night, was the act of the defendants, accomplished by shutting down and hoisting their gates. As far as appeared by the allegations of the counts which were held to be bad in that case, if the erections had been let alone, with the gate either up or down, no injury would have resulted to the mills below. But here is an erection fixed and permanent in its character and mode of construction, which does the mischief complained of without any other interference.

In *Dobson* v. *Blackmore*, 9 *Adol. & Ellis, N. S.* 1003 Lord Denman said, that if an obstruction appeared to be of a permanent nature in its construction, so that the plaintiff's reversionary interest might be lowered in public estima-tion, and loss might follow, he would not say the rever-sioner might not have an action. But however this may be in a case like this, where the erection complained of is the immediate cause of injury to the possession, and, without further interference by the act of a man, would in the ordinary course of things continue to be so on the de-termination of the tenancy, the reversioner has a right of action, on the ground, that the encroachment on the in-heritance may, by lapse of time, ripen into a right where the reversioner has notice or knowledge of it. *Angel on W. C.* § 221, 234, 398; *Bower* v. *Hill*, 1 *Bingham's N. C.* 549.

The second count being good, the demurrer, as it goes to the whole declaration, must be overruled.

ELMER and VREDENBURGH, Justices, concurred.